UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                    )
**RAY LEONARD**, *et al.*,          )
                                    )
    **Plaintiffs,**              )
                                    )
    v.                          )    Civil Action No. 13-1571 (ESH)
                                    )
**UNITED STATES DEPARTMENT**        )
**OF DEFENSE**, *et al.*,           )
                                    )
    **Defendants.**              )
_____ )

## **MEMORANDUM OPINION**

On October 14, 2013, Father Ray Leonard, a Catholic chaplain at the Naval Submarine Base in Kings Bay, Georgia, and Fred Naylor, one of his parishioners, filed suit against the United States Department of Defense, the United States Department of the Navy, the Secretary of the Navy, and the Secretary of Defense. In their suit, Leonard and Naylor allege that defendants violated their rights under the Religious Freedom Restoration Act ("RFRA"), 42 U.S.C. § 2000bb, *et. seq.* (Count I), and the First Amendment to the United States Constitution (Counts II-IV) when, pursuant to the Anti-Deficiency Act, 31 U.S.C. § 1342, they prevented Father Leonard from performing his ecclesiastical duties, even voluntarily, during the recent government shutdown. (Compl., Oct. 14, 2013 [ECF No. 1].)

One day after plaintiffs filed their lawsuit, defendants informed Father Leonard that despite the lapse in government funding, he (and other chaplains like him) would be permitted to continue working during the shutdown.[1] (Am. Compl., Jan. 3, 2014 [ECF No. 19], at ¶ 68.) On

---

[1] The government contends that the Secretary of the Navy, Ray Mabus, had already decided that clergy contractors like Leonard would be permitted to work, albeit voluntarily, during the shutdown prior to the

that day, Father Leonard signed a contract modification stating that, while the government did not presently have funds to pay him, he would be able to continue to perform his duties during Fiscal Year 2014 and would be paid "[w]hen appropriated funds bec[a]me available." (Opp. to Def.'s Mot. to Dismiss ("Opp."), Mar. 17, 2014 [ECF No. 21], at 5 & Ex. 1, Attach 1.) Two days later, the government shutdown ended and, by October 28, the Navy had resumed regular operations including the payment of civilian chaplains like Father Leonard. (Poole Decl. at ¶ 15.)

In the process of "reviewing the contract modification that Father Leonard signed on October 15, 2013," the procurement director for the Naval Submarine Base Kings Bay, Rebecca Washington, determined that Father Leonard "had never signed the underlying contract for religious services at Kings Bay for Fiscal Year 2014" and that the underlying contract omitted "standard contract provisions" required by the Federal Acquisition Regulation ("FAR"). (Decl. of Rebecca Washington ("Washington Decl."), Mar. 3, 2014 [ECF No. 20-3], at ¶ 4.) In light of this discovery, the Navy informed Father Leonard that he would need to sign a new contract. (Am. Compl. at ¶ 73.) Father Leonard, however, refused to sign this new contract on the grounds that he "believed [the new terms] to be more onerous than what [he] had originally agreed," including "requirements that [he] believed could potentially compromise priest-penitent confidentiality." (Decl. of Father Ray Leonard ("Leonard Decl."), Mar. 14, 2014 [ECF No. 21-1], at ¶¶ 31-32.) He also was "concerned that under this new agreement, [he] could be terminated for any reason . . . ." (*Id.* at ¶ 33.)

Though Father Leonard was paid for the month of October, the Navy informed him on November 25 that unless he signed the new contract he would not be paid for the work he

---

filing of plaintiffs' lawsuit. Yet, the Navy had not yet passed this information on to Father Leonard and other similarly situated contractors. (*See* Defs.' Mot. to Dismiss Pls.' Am. Compl. ("Mot."), Mar. 3, 2014 [ECF No. 20], at 5 n.5; Decl. of Cpt. Johnny Poole ("Poole Decl."), Dec. 20, 2013 [ECF No. 20-2], at ¶¶ 12-14.)

completed in November or any work going forward and would begin to look for his replacement. (*Id.* at ¶ 34.) In the Navy's view, "there was concern that Father Leonard could not be paid without a signed contract." (Mot. at 6 n.7.) Yet, on December 11, the Navy reversed its decision and informed Father Leonard that even if he failed to sign a new contract, he would continue to be paid for the rest of Fiscal Year 2014 and would not be replaced. (*See id.*; Leonard Decl. at ¶ 36.) Despite these assurances, the Navy rejected a purchase order submitted by Father Leonard on December 18 based on the fact that his contract was invalid—an error that the Navy rectified on December 23 by paying him in full. (*See* Leonard Decl. at ¶ 36; Washington Decl. at ¶ 8.)

Plaintiffs sought leave to file an amended complaint, which this Court granted. (Mot. to File Am. Compl., Jan. 2, 2014 [ECF No. 16].) In their amended complaint, plaintiffs added an additional count alleging that defendants' actions toward Father Leonard after he filed suit constitute unlawful retaliation (Count V). (*See* Am. Compl. at ¶¶ 107-10.) Though Father Leonard has not yet signed his new contract, he continues to work as the Catholic chaplain at the Naval Submarine Base Kings Bay and has not alleged any further delays or lapses in payment. (*See* Washington Decl. at ¶ 12.)

The case is presently before the Court on defendants' motion to dismiss the amended complaint on the grounds that (1) plaintiffs' initial claims "became moot long ago when the shutdown ended," and (2) Father Leonard does not have standing to bring his retaliation claim or alternatively, this claim is statutorily precluded by the Contract Disputes Act ("CDA"). (Mot. at 1.) Plaintiffs oppose this motion on the grounds that (1) "[t]he Anti-Deficiency Act has not been repealed . . . [such that] it is likely that when the government enters another shutdown, the First Amendment rights of Plaintiffs and other similarly situated individuals will again be violated," and (2) Father Leonard has standing to bring his retaliation claim which is not a contractual

claim governed by the CDA. (Opp. at 4, 14.) For the reasons stated below, the Court will grant defendants' motion to dismiss.

## ANALYSIS

### I. LEGAL STANDARD

On a motion to dismiss pursuant to Rule 12(b)(1), the plaintiff bears the burden of establishing by a preponderance of the evidence that the court has subject matter jurisdiction. *See Lujan v. Defenders of Wildlife,* 504 U.S. 555, 561 (1992). The Court must accept all factual allegations in the complaint as true and give the plaintiff the benefit of all reasonable inferences from the facts alleged. *See Jerome Stevens Pharms., Inc. v. FDA,* 402 F.3d 1249, 1253-54 (D.C. Cir. 2005). A court may dismiss a case for lack of subject matter jurisdiction only if "'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Richardson v. United States*, 193 F.3d 545, 549 (D.C. Cir. 1999) (quoting *Caribbean Broad. Sys., Ltd. v. Cable & Wireless PLC*, 148 F.3d 1080, 1086 (D.C. Cir. 1998)). Where a court's subject matter jurisdiction is called into question, it may consider matters outside the pleadings to ensure that it has the power to hear the case. *See Jerome Stevens Pharms., Inc.,* 402 F.3d at 1253.

### II. PLAINTIFFS' FIRST AMENDMENT AND RFRA CLAIMS

In Counts I-IV, plaintiffs allege violations of their rights under RFRA and the First Amendment resulting from defendants' actions during the government shutdown. In their motion to dismiss, defendants respond that these claims are now moot. The Court agrees.

"Federal courts lack jurisdiction to decide moot cases because their constitutional authority extends only to actual cases or controversies." *Iron Arrow Honor Soc'y v. Heckler*, 464 U.S. 67, 70 (1983). The constitutional case or controversy requirement "means that,

throughout the litigation, the plaintiff must have suffered, or be threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision." *Spencer v. Kemna*, 523 U.S. 1, 7 (1998) (internal citations and quotation marks omitted). "Even where litigation poses a live controversy when filed, the [mootness] doctrine requires a federal court to refrain from deciding it if events have so transpired that the decision will neither presently affect the parties' rights nor have a more-than-speculative chance of affecting them in the future." *Clarke v. United States*, 915 F.2d 699, 701 (D.C. Cir. 1990) (internal citations and quotation marks omitted). An intervening event may render a claim moot if there is no reasonable expectation that the conduct will recur. *Pharmachemie B.V. v. Barr Labs., Inc.*, 276 F.3d 627, 631 (D.C. Cir. 2002). "Simply stated, a case is moot when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome." *Larsen v. U.S. Navy*, 525 F.3d 1, 3 (D.C. Cir. 2008) (quoting *Los Angeles Cnty. v. Davis*, 440 U.S. 625, 631 (1979)).

Here, as a result of defendants' alleged violations of plaintiffs' constitutional and statutory rights, the amended complaint seeks (1) a declaratory judgment that "Defendants' actions violate the [RFRA] and the First Amendment," and (2) an injunction prohibiting defendants from inhibiting Father Leonard from performing his ecclesiastical duties based on the Anti-Deficiency Act.[2] (Am. Compl. at Prayer for Relief.) The problem for plaintiffs, however, is that the need for this relief effectively ended when the shutdown did. At the conclusion of the

---

[2] Plaintiffs also seek nominal damages in their amended complaint. (Am. Compl. at Prayer for Relief.) However, this is not a *Bivens*-type claim whereby federal officials are sued in their individual capacities for violating plaintiffs' constitutional rights. To the contrary, this is an action taken against government officers in their official capacities. Therefore, while plaintiffs may seek declaratory and injunctive relief, they may not seek damages because the United States has not waived sovereign immunity for monetary relief for unconstitutional acts taken by government employees acting in their official capacities. *See Clark v. Library of Congress*, 750 F.2d 89, 102-03 (D.C. Cir. 1984). The government also has not waived sovereign immunity for monetary damages resulting from violations of RFRA. *Webman v. Fed. Bureau of Prisons*, 441 F.3d 1022, 1026 (D.C. Cir. 2006) ("RFRA does not waive the federal government's sovereign immunity for damages.").

5

shutdown Father Leonard was permitted to perform his job for Fiscal Year 2014. Likewise, once Father Leonard was no longer forbidden from performing his job, plaintiff Fred Naylor regained access to all the religious activities that he sought to participate in despite the fact that no court had issued declaratory or injunctive relief.

Therefore, even construing the facts in the light most favorable to the plaintiffs, as the Court must, there can be no allegation that defendants are presently violating any of plaintiffs' statutory or constitutional rights and their claims are therefore moot. *See Nat'l Black Police Ass'n v. Dist. of Columbia*, 108 F.3d 346, 349 (D.C. Cir. 1997). Plaintiffs seemingly concede as much in the first sentence of their opposition when they describe their injuries in the past tense— "[p]laintiffs' injuries are not speculative—*they occurred*." (Opp. at 1 (emphasis in original).) Federal courts are, however, "not in the business of pronouncing [that] past actions which have no demonstrable continuing effect were right or wrong." *See Spencer*, 523 U.S. at 17. Though the Court recognizes that the issue "may [present] an important question to plaintiffs . . . [if] it is not a live controversy that can avail itself of the judicial powers of the federal courts . . . [i]t is . . . moot." *Newdow v. Roberts*, 603 F.3d 1002, 1008 (D.C. Cir. 2010).

Plaintiffs attempt to salvage these claims in two ways. First, they argue that this case falls under the "voluntary cessation" exception to the mootness doctrine. Under this exception "a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice . . . [because i]f it did, the courts would be compelled to leave [t]he defendant . . . free to return to his old ways." *Friends of the Earth, Inc. v. Laidlaw*, 528 U.S. 167, 189 (2000) (internal citations and quotation marks omitted). That said, "[i]n order for this exception to apply, the defendant's voluntary cessation must have arisen *because of* the litigation." *Aref v. Holder*, 774 F. Supp. 2d 147, 161 (D.D.C. 2011) (quoting *Pub.*

6

*Util. Comm'n of Cal. v. Fed. Energy Regulatory Comm'n*, 100 F.3d 1451, 1460 (9th Cir. 1996)). Of course, the government shutdown did not end because of this litigation, so this exception is inapplicable. *See Wyo. Outdoor Council v. Dombeck*, 148 F. Supp. 2d 1, 8 n.1 (D.D.C. 2001) ("[T]he voluntary cessation doctrine does not apply when the challenged activity stops for reasons unrelated to litigation.") (citing *Sze v. INS*, 153 F.3d 1005, 1008-09 (9th Cir. 1998)).

Second, plaintiffs argue that their claims are justiciable on the grounds that "[d]efendants cannot promise that both Houses of Congress will agree upon their next budget and a shutdown will be avoided [a]nd . . . that the Anti-Deficiency Act will not be imposed again. . . ." (Opp. at 10.) The Court interprets this as an attempt to invoke the "capable of repetition yet evading review" exception to the mootness doctrine. This exception requires plaintiffs to demonstrate that "(1) the challenged action is in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there [is] a reasonable expectation that the complaining party would be subjected to the same action again." *Clarke*, 915 F.2d at 704 (quoting *Murphy v. Hunt*, 455 U.S. 478, 482 (1982)) (alteration in original). The capable of repetition prong specifically requires that "[t]he party invoking the exception must show a reasonable degree of likelihood that the issue will be the basis of a continuing controversy between the[ ] two parties." *United Bhd. of Carpenters & Joiners of Am. v. Operative Plasterers' & Cement Masons' Int'l Ass'n*, 721 F.3d 678, 688 (D.C. Cir. 2013) (internal citations and quotation marks omitted).

While most government shutdowns—including the seventeen-day shutdown at issue in this case— are short in duration, it does not necessarily follow that agency action taken during these shutdowns is sufficiently capable of repetition for purposes of establishing a justiciable claim. As Judge Sullivan explained in *Am. Fed.'n of Gov't Employees v. Rivlin*, 995 F. Supp. 165,166 (D.D.C. 1998) *summarily aff'd sub nom. Am. Fed'n of Gov't Employees v. Raines*, 1998

WL 545417 (D.C. Cir. July 15, 1998), a case brought after the 1996 government shutdown by government employees challenging the requirement that they had to work without compensation during the shutdown, "[g]iven the passage of the 1996 budget, th[e] Court's decision would neither presently affect the parties' rights nor have more than a speculative chance of affecting those rights in the future" and "[it] would be entirely speculative for the Court to attempt to predict if, and when another lapse in appropriations may occur, how long that lapse might be, which agencies might be subject to the lapse, which employees might be affected, and whether employees will be required to work without compensation." Similarly, Judge Grady of the Eastern District of Virginia recently concluded that alleged wrongs committed by the government during a shutdown were not "capable of repetition yet evading review," because "the number of contingencies that would need to align to recreate the situation underlying Plaintiff's complaint does not rise to the level of probability required to invoke this exception to the mootness doctrine." (Mot. Ex. 1, *Nat'l Forest Recreation Ass'n v. Tidwell*, 13-cv-01287 (E.D. Va.) (Jan. 24, 2014)).

Plaintiffs attempt to distinguish *Rivlin* and *Tidwell* on the grounds that their claims concern violations of constitutional rights and a comprehensive federal statute protecting religious practice. (Opp. at 11-14.) The question of mootness is not, however, limited to non-constitutional challenges. *See, e.g.*, *Fraternal Order of Police v. Rubin*, 134 F. Supp. 2d. 39, 40 (D.D.C. 2001) (holding that First Amendment claim was moot). Moreover, the mootness doctrine has nothing whatsoever to do with the underlying basis for bringing the claim. It is instead based on the constitutional prohibition against issuing what amounts to an advisory opinion. *El Paso Natural Gas Co. v. United States*, 2014 WL 1328164 (D.C. Cir. Apr. 4, 2014) ("Because the exercise of judicial power under Article III depends upon the existence of a case

8

or controversy, a federal court may not render advisory opinions or decide questions that do not affect the rights of parties properly before it." (internal citations omitted)).

The Court concludes, in accordance with *Rivlin* and *Tidwell*, that there are simply too many contingencies that would need to occur simultaneously for this case to be considered "capable of repetition": (1) the government would need to shut down once again, (2) it would need to exclude payment for chaplains from any temporary funding schemes; (3) Father Leonard, who works on year-to-year contracts, would need to continue to serve at the Naval Submarine Base Kings Bay as a chaplain, and (4) the Navy would need to apply the Anti-Deficiency Act so as to limit chaplains' religious activities despite the express decision not to do so at the end of the most recent government shutdown. Because the likelihood that these events will reoccur is, at best, speculative, plaintiffs have failed to meet their burden of showing that they are "reasonably likely to suffer [the alleged] legal wrong again" to establish that their claims are "capable of repetition yet evading review." *See United Bhd. of Carpenters*, 721 F.3d at 688. Counts I-IV in plaintiffs' amended complaint will therefore be dismissed as moot.

## III. FATHER LEONARD'S RETALIATION CLAIM

In Count V, Father Leonard alleges that defendants unlawfully retaliated against him for bringing the present lawsuit in violation of his First Amendment rights. (Am. Compl. at ¶¶ 109-10.) Defendants respond in their motion to dismiss that Father Leonard does not have standing to bring this claim because he suffers no ongoing injury and, even if there is standing, the Court would not have jurisdiction under the CDA. (Mot. at 11-17.) Because, the Court holds that Father Leonard does not have standing to bring this retaliation claim, Count V will be dismissed on this ground and the Court need not reach the applicability of the CDA.

9

"While the burden of production to establish standing is more relaxed at the pleading stage than at summary judgment, a plaintiff must nonetheless allege 'general factual allegations of injury resulting from the defendant's conduct (notwithstanding 'the court presume[es] that general allegations embrace the specific facts that are necessary to support the claim')." *Nat'l Ass'n of Homebuilders v. EPA*, 667 F.3d 6, 12 (D.C. Cir. 2011) (internal citations omitted) (alteration in original). "[P]ast injuries alone are insufficient to establish standing," and plaintiffs must show that they "suffer[ ] an ongoing injury or face[ ] an immediate threat of injury." *Dearth v. Holder*, 641 F.3d 499, 501 (D.C. Cir. 2011) (citing *City of Los Angeles v. Lyons*, 461 U.S. 95, 105 (1983)).

In plaintiffs' amended complaint, Father Leonard argues that "[a]s a result of petitioning to the Court, Defendants have taken adverse action against [him] by attempting to not honor his contract of employment, by attempting to add additional burdens and arduous terms to his contract of employment, and by refusing to timely pay [him] for his performed services." (Am. Compl. at ¶ 109.) That said, plaintiff appears to concede in his opposition that these alleged injuries are not ongoing, since he acknowledges that he "suffer*ed* actual harm as a result of Defendants' actions." (Opp. at 15 (emphasis added).) While admitting that these harms occurred in the past, plaintiff argues that "[p]ast wrongs may serve as evidence bearing on whether there is a real and immediate threat of repeated injury." (*Id.* (citing *NB ex rel. Peacock,* 682 F.3d 77, 84 (D.C. Cir. 2012) (internal citations and quotation marks omitted).) Though an accurate characterization of the law, it is of no help to plaintiff. Unlike *NB ex rel. Peacock*, where the Court held that the facts alleged in the complaint demonstrated that at least one plaintiff likely suffered both present harm and imminent threat of future harm based on the facts articulated in the complaint, *see id.* at 82-83, no such allegations are present in plaintiffs' amended complaint.

To the contrary, Father Leonard does not dispute that the Navy (1) paid him the money to which he was entitled *prior* to filing its amended complaint on January 3, 2014; (2) has continued to pay him for his services for the last several months; and (3) has represented to him that he will continue to be paid for Fiscal Year 2014 so long as he fulfills his duties—even if he chooses not to sign a new contract.  Therefore, at most, plaintiff presents a speculative injury that "[t]here is no guarantee beyond the Navy's current 'assurance' that this retaliation will not occur again, making injunctive and declaratory relief necessary to prevent future harm." (Opp. at 15.)  While it is true that plaintiff need not show absolute certainty of future injury to establish standing at this stage, an "attenuated chain of possibilities[] does not satisfy the [impending injury] requirement."  *Clapper v. Amnesty Int'l*, 133 S.Ct. 1138, 1148 (Feb. 26, 2013).  Therefore, because the only retaliatory injuries alleged are past injuries and Father Leonard has not articulated a credible threat of future injury, Count V will be dismissed.

## CONCLUSION

Accordingly, the motion to dismiss will be granted.  A separate order accompanies this Memorandum Opinion.

/s/
ELLEN SEGAL HUVELLE
United States District Judge

Date: April 30, 2014